LABARGA, J.
 

 In the case before us, The Bionetics Corporation (“Bionetics”) seeks review of the decision of the Fifth District Court of Appeal in
 
 Kenniasty v. Bionetics Corp.,
 
 10 So.3d 1183 (Fla. 5th DCA 2009), on the ground that it expressly and directly conflicts with the decision of the First District Court of Appeal in
 
 Walker v. Cash Register Auto Insurance of Leon County, Inc.,
 
 946 So.2d 66 (Fla. 1st DCA 2006). We have jurisdiction.
 
 See
 
 art. V, § 3(b)(3), Fla. Const.
 

 This case concerns the applicability of the safe harbor provision contained in section 57.105, Florida Statutes (2002). Generally speaking, section 57.105 provides the basis for sanctions against parties and counsel who assert frivolous claims or defenses or pursue litigation for the purpose of unreasonable delay.
 
 See
 
 § 57.105, Fla. Stat. (2002). This statute was amended to include a safe harbor provision under subsection (4), which took effect on July 1, 2002, while the present case was ongoing at the trial level.
 
 See
 
 ch.2002-77, §§ 1-2, at 908-09, Laws of Florida. Section 57.105(4) provides:
 

 A motion by a party seeking sanctions under this section must be served but may not be filed with or presented to the court unless, within 21 days after service of the motion, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.
 

 § 57.105(4), Fla. Stat. (2002).
 

 The conflict issue presented for our determination is whether the safe harbor provision of section 57.105(4), Florida Statutes, applies where a party’s frivolous claims were originally filed before the provision became effective, but the initial motion seeking attorney’s fees was filed in court after the provision became effective without the motion first having been served on the opposing party twenty-one days before filing. As explained in greater detail below, the Fifth District in
 
 Ken-niasty
 
 held that the safe harbor provision contained in section 57.105(4) applies in a case where the party seeking sanctions filed its motion for attorney’s fees after the safe harbor provision took effect despite the fact that the lawsuit commenced prior to the effective date of section 57.105(4).
 
 Kenniasty,
 
 10 So.3d at 1186. In contrast, the First District in
 
 Walker
 
 held that the safe harbor provision cannot apply to a case where the complaint was filed and the alleged legal harm occurred prior to the effective date of the safe harbor provision.
 
 Walker,
 
 946 So.2d at 71-72. We conclude that the safe harbor provision does not apply to a case where claims found to be frivolous by a trial court were originally filed before the safe harbor provision took effect. We therefore quash the decision of the Fifth District in
 
 Kenniasty
 
 to the extent that it is inconsistent with this opinion, and approve the decision of the First District in
 
 Walker
 
 to the extent that it is consistent with our analysis and holding.
 

 FACTS AND PROCEDURAL BACKGROUND
 

 Frank Kenniasty (“Kenniasty”) was former counsel to Judith Deitz and William Moore d/b/a Techniarts Engineering (“Deitz and Moore”). Kenniasty and Deitz
 
 *945
 
 and Moore appealed to the Fifth District the trial court’s entry of final judgment in which Bionetics was awarded $89,025,778 in attorney’s fees and costs against each pursuant to section 57.105, Florida Statutes.
 
 Kenniasty,
 
 10 So.3d at 1184. The Fifth District reversed, concluding that Bionetics failed to comply with the safe harbor provision.
 
 Id.
 
 at 1186. The district court described the facts underlying its decision in
 
 Kenniasty
 
 as follows:
 

 This case arose as a result of Deitz and Moore having prevailed in earlier litigation. In that case, Bionetics had filed a complaint against Deitz and Moore in 1999, alleging an ownership interest in motion picture film-processing [“MOPIX”] equipment that Deitz and Moore had purchased from the Defense Reutilization and Management Office. In its complaint, Bionetics also sought sequestration of the MOPIX equipment. The court granted an order of sequestration, and the MOPIX equipment was sequestered in a temperature and humidity-controlled environment at Deitz’s & Moore’s facility. There, the MOPIX equipment remained substantially assembled.
 

 Deitz and Moore sought relief from the sequestration, offering to post a bond “in lieu of sequestration of the MOPIX [equipment so that [they] could continue their business opportunities.” Bionetics rejected the offer, and the trial court denied the motion. Later, Deitz and Moore filed a motion to amend the order of sequestration because the lease had expired on their facility. The trial court ordered the Sheriff to move the MOPIX equipment to Bionetics’ facility for storage.
 

 The case went to trial and Deitz and Moore prevailed as the legal owners of the MOPIX equipment, and the trial court vacated the order of sequestration. When Deitz and Moore entered Bionet-ics’ facility, they found it in a seriously degraded condition in a non-secure area with “a leaking roof, no air conditioning units, ... lack of ventilation, and extreme filth and dust.” The equipment was disassembled and scattered on the facility’s floor.
 

 In 2001, Deitz and Moore, with Ken-niasty as counsel, filed a four count complaint against Bionetics, alleging malicious prosecution in count one, negligent sequestration in count two, misappropriation of trade secrets in count three, and tortious interference with business relations in count four. Bionetics filed a motion to dismiss all counts. The trial court denied the motion as to count one, deferred in ruling as to count two, and granted the motion as to counts three and four with leave to amend.
 

 Deitz and Moore filed an amended four count complaint on February 13, 2002, alleging malicious prosecution in count one, negligent sequestration in count two, misappropriation of trade secrets in count three, and tortious interference with business relations in count four. Bionetics once again filed a motion to dismiss all counts. The trial court granted the motion with prejudice as to count two, and with leave to amend as to counts one, three and four.
 

 On April 10, 2002, Deitz and Moore filed a second amended complaint, which consisted of six counts: malicious prosecution in count one, misappropriation of trade secrets in count two, tortious interference with business relations in count three, invasion of privacy in count four, trespass to property in count five, and violation of the Procurement Integrity Act (41 U.S.C. § 423) in count six. Again, Bionetics filed a motion to dismiss all counts. The trial court granted the motion with leave to amend counts one through five, and with prejudice as to count six.
 

 Deitz and Moore filed a third amended complaint on September 17, 2002,
 
 *946
 
 alleging malicious prosecution in count one, misappropriation of trade secrets in count two, and tortious interference with business relations in count three. Bion-etics once more filed a motion to dismiss all counts. The trial court denied the motion as to count one but granted the motion as to counts two and three with leave to amend.
 

 On November 12, 2002, Deitz and Moore filed a fourth amended complaint, alleging malicious prosecution in count one, misappropriation of trade secrets in count two, and defamation in count three. Bionetics filed a motion to dismiss counts two and three. The trial court denied the motion as to count two, but granted the motion as to count three with leave to amend.
 

 On March 28, 2003, Bionetics filed a motion for award of attorney’s fees pursuant to section 57.105, Florida Statutes (2002). The trial court deferred consideration and ruling on the award of attorney’s fees until the conclusion of the trial. The case was tried without a jury and, at the close of Deitz’s & Moore’s case, Bionetics moved for involuntary dismissal, which the trial court granted. On July 21, 2004, Bionetics filed a second motion for an award of attorney’s fees pursuant to Section 57.105, Florida Statutes.
 

 Id.
 
 at 1184-85. The trial court found that Bionetics was entitled to attorney’s fees pursuant to section 57.105 for the following three claims: (1) tortious interference with contract;
 
 [1]
 
 (2) invasion of privacy; and (3) violation of the Procurement Integrity Act under 41 U.S.C. § 423. A successor judge found that Bionetics was entitled to $72,000 in attorney’s fees and $6,051.56 in costs. Accordingly, the lower court entered a final judgment awarding Bionetics $39,025.78 in attorney’s fees and costs against Kenniasty, individually, and $39,025.78 against Deitz, individually, Moore individually, and d/b/a Techniarts Engineering. Kenniasty and Deitz and Moore appealed the trial court’s entry of final judgment awarding Bionetics attorney’s fees and costs to the Fifth District.
 

 On appeal, the Fifth District held that the trial court erred in awarding Bionetics attorney’s fees and costs pursuant to section 57.105 because Bionetics failed to comply with the safe harbor provision of that statute.
 
 Id.
 
 at 1185-86. The district court disagreed with Bionetics’ contention that “the safe harbor provision of section 57.105(4) represented a substantive rather than procedural statutory change and therefore could not be applied in this lawsuit.”
 
 Id.
 
 at 1186. The district court held in relevant part that “the safe harbor provision applies in situations like this case where the lawsuit was filed before [the effective date of] July 1, 2002, but the motion for attorney’s fees was not filed until after this date.”
 
 Id.
 
 Consequently, the district court concluded that the trial court erred in awarding Bionetics attorney’s fees.
 
 Id.
 

 [2]
 

 Bionetics subsequently
 
 *947
 
 sought review in this Court, alleging express and direct conflict with the First District’s decision in
 
 Walker v. Cash Register Auto Insurance of Leon County, Inc.,
 
 946 So.2d 66 (Fla. 1st DCA 2006).
 

 In
 
 Walker,
 
 appellant Gabriel Walker filed a complaint against Cash Register Auto Insurance before the safe harbor provision became effective, seeking damages for racial prejudice on the authority of 42 U.S.C. § 1981 after his two-year-old son was denied access to the company’s restroom facility.
 
 Id.
 
 at 67. After the jury returned a verdict in favor of Cash Register, the company sought to recover attorney’s fees and costs pursuant to section 57.105(1), which the trial court awarded.
 
 Id.
 
 at 68. On appeal, Walker contended that an award of attorney’s fees under section 57.105 was improper because Cash Register failed to comply with the safe harbor provision contained in subsection (4) of the statute.
 
 Id.
 
 at 69. The First District noted that the safe harbor provision took effect on July 1, 2002, and observed: “The instant complaint was filed on June 11, 2002. The act of denying Walker and his son use of the restroom was alleged to have occurred on December 31, 2001. Thus, any application of subsection (4) to the instant case would be retroactive.”
 
 Id.
 
 at 71. The First District held that because the safe harbor provision was substantive in nature, the provision did not have retroactive application and thus could not be applied to
 
 Walker. Id.
 
 at 71-72.
 

 ANALYSIS
 

 Bionetics contends that the safe harbor provision contained in section 57.105(4) does not apply in the present case because the claims were originally filed prior to the effective date of the safe harbor provision. The question of whether a statute applies retroactively or prospectively is a pure question of law; thus, our standard of review is de novo.
 
 See D’Angelo v. Fitzmaurice,
 
 863 So.2d 311, 314 (Fla.2003) (stating that the standard of review for pure questions of law is de novo). We begin our analysis by examining the substantive or procedural nature of the safe harbor provision.
 

 Nature of Safe Harbor Provision
 

 Section 57.105 previously authorized an award of attorney’s fees when there was a complete absence of a justiciable issue of either law or fact raised by the losing party.
 
 See, e.g., Mullins v. Kennelly,
 
 847 So.2d 1151, 1153-54 (Fla. 5th DCA 2003) (citing § 57.105, Fla. Stat. (1997)). The statute was amended in 1999 as part of the 1999 Tort Reform Act “to reduce frivolous litigation and thereby to decrease the cost imposed on the civil justice system by broadening the remedies that were previously available,”
 
 Yakavonis v. Dokphin Petroleum, Inc.,
 
 934 So.2d 615, 619 (Fla. 4th DCA 2006) (quoting
 
 Wendy’s of Ne. Fla., Inc. v. Vandergriff,
 
 865 So.2d 520, 523 (Fla. 1st DCA 2003)), and to allow an award of attorney’s fees when a claim or defense, rather than the entire action, is frivolous.
 
 See Albritton v. Ferrera,
 
 913 So.2d 5, 8 (Fla. 1st DCA 2005) (citing
 
 Mullins,
 
 847 So.2d at 1154);
 
 see also
 
 ch. 99-225, § 4, at 1406-07, Laws of Fla. The statute was again amended to include a safe harbor provision, which took effect on July 1, 2002, while the present case was pending in trial court.
 
 See
 
 ch.2002-77, §§ 1-2, at 908-09, Laws of Florida.
 
 [3]
 

 One relevant inquiry when analyzing a change in statutory law is whether the
 
 *948
 
 amendment constitutes a substantive change or a procedural or remedial change in the law.
 
 See Smiley v. State,
 
 966 So.2d 330, 334 (Fla.2007). This Court generally adheres to the following guidelines to determine whether a statute is procedural or substantive in nature:
 

 Substantive law has been defined as that part of the law which creates, defines, and regulates rights, or that part of the law which courts are established to administer. It includes those rules and principles which fix and declare the primary rights of individuals with respect towards their persons and property. On the other hand, practice and procedure “encompass the course, form, manner, means, method, mode, order, process or steps by which a party enforces substantive rights or obtains redress for their invasion. ‘Practice and procedure’ may be described as the machinery of the judicial process as opposed to the product thereof.” It is the method of conducting litigation involving rights and corresponding defenses.
 

 Massey v. David,
 
 979 So.2d 931, 936-37 (Fla.2008) (emphasis omitted) (quoting
 
 Haven Fed. Sav. & Loan Ass’n v. Kirian,
 
 579 So.2d 730, 732 (Fla.1991)).
 

 We have previously held that a statutory right to attorney’s fees constitutes a substantive right.
 
 See Menendez v. Progressive Express Ins. Co.,
 
 35 So.3d 873, 878 (Fla.2010) (citing
 
 Moser v. Barron Chase Sec., Inc.,
 
 783 So.2d 231, 236 (Fla.2001)). Further, district courts have concluded that statutory provisions which impose limitations on the right to recover attorney’s fees are substantive in nature.
 
 See, id.
 
 at 879 (citing
 
 Stolzer v. Magic Tilt Trailer, Inc.,
 
 878 So.2d 437, 438 (Fla. 1st DCA 2004) (holding that a statutory amendment allowing an employer or carrier thirty rather than fourteen days to provide workers’ compensation benefits before being responsible for attorney’s fees was a substantive change in the statute)).
 

 With regard to the specific nature of the safe harbor provision contained in section 57.105(4), the First District in
 
 Walker,
 
 the conflict case, explained:
 

 Subsection (4) does more than require the giving of notice. It creates an opportunity to avoid the sanction of attorney’s fees by creating a safe period for withdrawal or amendment of meritless allegations and claims. The withdrawal or amendment of a claim, allegation or defense could substantively alter a case.
 

 Walker,
 
 946 So.2d at 71. We agree. Accordingly, we hold that the safe harbor provision contained in section 57.105(4) is substantive in nature. Having determined that the safe harbor provision is substantive, we turn now to consider the prospective or retroactive application of section 57.104(4).
 

 Prospective or Retroactive Application of Section 57.105(1)
 

 Substantive statutes are presumed to apply prospectively absent clear legislative intent to the contrary.
 
 See Metro. Dade County v. Chase Fed. Hous. Corp.,
 
 737 So.2d 494, 499 (Fla.1999) (“The general rule is that in the absence of clear legislative intent to the contrary, a law affecting substantive rights, liabilities and duties is presumed to apply prospectively.”) (citing
 
 Hassen v. State Farm Mut. Auto. Ins. Co.,
 
 674 So.2d 106, 108 (Fla.1996);
 
 Arrow Air, Inc. v. Walsh,
 
 645 So.2d 422, 425 (Fla.1994)). When determining whether a statute should be retroactively applied, the statute at issue is subjected to the following inquiries:
 

 The first inquiry is one of statutory construction: whether there is clear evidence of legislative intent to apply the statute [retroactively]. If the legislation clearly expresses an intent that it apply retroactively, then the second inquiry is whether retroactive application is constitutionally permissible.
 

 
 *949
 

 Id.
 
 at 499 (citations omitted). Further, to determine legislative intent as to retroac-tivity, this Court looks both to the purpose behind the enactment of the statute and the terms of the statute.
 
 Id.
 
 at 500.
 

 As the First District recognized in
 
 Walker,
 
 the purpose of the safe harbor provision is “to give a pleader a last clear chance to withdraw a frivolous claim or defense ... or to reconsider a tactic taken primarily for the purpose of unreasonable delay.”
 
 Walker,
 
 946 So.2d at 70 (citing
 
 Maxwell Bldg. Corp. v. Euro Concepts, LLC,
 
 874 So.2d 709, 711 (Fla. 4th DCA 2004)). With regard to the language of the safe harbor provision, there is no evidence of a legislative intent to rebut the presumption against retroactivity. Both the statute and its enacting legislation are silent on the forward or backward reach of the safe harbor provision. Tellingly, the enacting legislation simply provides that “[t]his act shall take effect July 1, 2002.” Ch.2002-77, § 2, at 909, Laws of Fla. Due to the lack of evidence of legislative intent to apply the statute retroactively, we conclude that the safe harbor provision applies prospectively. Consequently, we need not consider the second interrelated inquiry as to whether retroactive application is constitutionally permissible.
 
 See Mem’l Hosp.-W. Volusia, Inc. v. News-Journal Corp.,
 
 784 So.2d 438, 441 (Fla. 2001) (citing
 
 Singletary v. State,
 
 322 So.2d 551, 552 (Fla.1975)).
 

 Although we conclude that the safe harbor provision applies prospectively, this conclusion does not completely resolve the issue before us. We thus proceed to consider whether the safe harbor provision applies to cases such as
 
 Kenniasty
 
 where the frivolous claims were originally filed before the provision became effective, but the motion seeking attorney’s fees pursuant to section 57.105 was filed after the provision took effect.
 

 The Fifth District in
 
 Kenniasty
 
 held that “[although Deitz and Moore filed suit prior to the effective date of section 57.105(4), this safe harbor provision applied because Bionetics filed its motion for attorney’s fees on March 28, 2008, well after its July 1, 2002, effective date.”
 
 Kenniasty,
 
 10 So.3d at 1186. In contrast, the First District in
 
 Walker
 
 held that the safe harbor provision did not apply retroactively to a case where the complaint was filed and the legal harm occurred before the effective date of the safe harbor provision.
 
 Walker,
 
 946 So.2d at 71-72. Thus, whereas the Fifth District in
 
 Kenniasty
 
 focused on the date the motion for attorney’s fees was filed to determine the applicability of the safe harbor provision, the First District in
 
 Walker
 
 focused on the time the legal harm occurred and the date the underlying suit was filed to determine the prospective application of the safe harbor provision.
 

 We conclude that
 
 Walker
 
 espouses the correct view. In this case, the claims for tortious interference with business relations, invasion of privacy, and violation of the federal Procurement Integrity Act were originally filed before the safe harbor provision became effective. Because the safe harbor provision is substantive and does not apply retroactively, we hold that the safe harbor provision cannot apply in this case. Therefore, the Fifth District erred in concluding that the safe harbor provision applied because Bionetics’ motion for attorney’s fees was filed after the safe harbor provision took effect. Having resolved the conflict presented before this Court, we decline to address the remaining issues raised by both parties in this case.
 

 CONCLUSION
 

 Based on the foregoing, we quash the decision of the Fifth District in
 
 Kenniasty v. Bionetics Corp.,
 
 10 So.3d 1183 (Fla. 5th DCA 2009), to the extent that it is inconsistent with our decision, and we approve
 
 *950
 
 the decision of the First District in
 
 Walker v. Cash Register Auto Insurance of Leon County, Inc.,
 
 946 So.2d 66 (Fla. 1st DCA 2006), to the extent it is consistent with our analysis and holding. Upon remand of this proceeding, the Fifth District may consider and decide issues that were raised but not reached by the district court or this Court.
 

 It is so ordered.
 

 CANADY, C.J., and PARIENTE, LEWIS, QUINCE, POLSTON, and PERRY, JJ., concur.
 

 [1]
 

 . The court order on entitlement to attorney’s fees refers to this claim as tortious interference with contract. However, Deitz and Moore actually pled a claim for tortious interference with business relations.
 

 [2]
 

 . The decision in
 
 Kenniasty
 
 expressly held that Bionetics failed to give timely notice under section 57.105(4) as to the counts for invasion of privacy and violation of the federal Procurement Integrity Act.
 
 Kenniasty,
 
 10 So.3d at 1186. After considering whether the safe harbor provision applied to the case, the court proceeded to address the parties’ various contentions with regard to the claim for tortious interference with business relations. Although the district court did not expressly hold that Bionetics failed to comply with the safe harbor provision as it relates to the claim for tortious interference with business relations, we read the decision to hold that Bion-etics failed to comply with the provision on all three claims. We note that apart from the applicability of the safe harbor provision to
 
 *947
 
 the claims in this case, we do not disturb the district court’s other holdings with regard to the claim for tortious interference with business relations.
 

 [3]
 

 . The statute was amended most recently effective July 1, 2010, to include exceptions to monetary sanctions.
 
 See
 
 ch.2010-129, §§ 1-2, at 994-95, Laws of Fla.