# Third District Court of Appeal

## State of Florida

Opinion filed August 8, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-2549
Lower Tribunal No. 15-9251
_____

**Benedetto Dimitri,**
Appellant,

vs.

**Commercial Center of Miami Master Association, Inc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Jose M. Rodriguez, Judge.

David B. Israel (Davie), for appellant.

Dieguez & Associates, LLC and Anthony Dieguez; Thais Hernandez, for appellee.

Before ROTHENBERG, C.J., and SALTER and LUCK, JJ.

LUCK, J.

We are faced, again, with an issue that has vexed the Florida Supreme Court, this court, and our sister district courts: is the master association of a

development made up of smaller sub-associations a condominium "association" subject to the requirements of Florida Statutes chapter 718. See Heron at Destin W. Beach & Bay Resort Condo. Ass'n, Inc. v. Osprey at Destin W. Beach, 94 So. 3d 623, 630 n.* (Fla. 1st DCA 2012) ("Whether a master association is controlled by chapter 718 is an admittedly confusing area of law."); Downey v. Jungle Den Villas Recreation Ass'n, Inc., 525 So. 2d 438 (Fla. 5th DCA 1988); Siegel v. Div. of Fla. Land Sales & Condos., Dep't of Bus. Regulation, 453 So. 2d 414 (Fla. 3d DCA 1984), quashed, 479 So. 2d 112 (Fla. 1985); Raines v. Palm Beach Leisureville Cmty. Ass'n, Inc., 413 So. 2d 30 (Fla. 1982). Because we agree with the trial court that the master association in this case is not a condominium "association" as defined by the legislature in 1982 when it was incorporated, and a later amendment to the definition does not apply retroactively, we affirm the summary judgment in favor of the master association.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Commercial Center of Miami Master Association was formed in 1982 under the recorded "Declaration of Covenants, Restrictions and Easements for The Commercial Center of Miami." Its articles of incorporation state it was created as a "corporation not for profit under Chapter 617." Commercial Center operates as a master association for a group of buildings, each with its own sub-association.

2

Benedetto Dimitri owns six commercial condominium units located in one of the sub-associations.

On March 30, 2015, Dimitri sent the master association a letter requesting the inspection and production of specific documents pursuant to section 718.111(12).[1] Months later, Dimitri filed the operative complaint seeking declaratory and injunctive relief (counts one and two) and damages (count three). Dimitri alleged that the master association violated section 718.111(12) when it refused to respond to his request for association documents. He requested the trial court enter an order determining that the master association was subject to chapter 718 – the state's condominium association statute – and requiring it to "cease and desist from further acts of violation of Section 718.111(12)." In response, the master association asserted that it was not a condominium association subject to the disclosure requirements of chapter 718.

Both parties filed motions for summary judgment with the trial court. After a hearing, the trial court reached two conclusions: (1) the current definition of condominium "association," which was last amended in 1991, did not apply retroactively; and (2) based on the definition that applied when the master

---

[1] Section 718.111(12) provides, in part, that an association maintain its official records and that the records be available for inspection or copying by an association member. Access to the records must be provided within ten working days of receipt of the request and "[a] unit owner who is denied access to official records is entitled to the actual damages or minimum damages for the association's willful failure to comply." § 718.111(12)(c), Fla. Stat. (2014).

association was formed, the master association was not a condominium "association" subject to chapter 718. This appeal followed.

## STANDARD OF REVIEW

"A trial court's final summary judgment is subject to a de novo review when it is based upon a conclusion of law." Dominguez v. Hayward Indus., Inc., 201 So. 3d 100, 101 (Fla. 3d DCA 2015). "The question of whether a statute applies retroactively or prospectively is a pure question of law; thus, our standard of review is de novo." Bionetics Corp. v. Kenniasty, 69 So. 3d 943, 947 (Fla. 2011)

## DISCUSSION

There have been two definitions of condominium "association" in the last forty years. In 1982, when the master association was incorporated and the declaration was executed, a condominium "association" was "the corporate entity responsible for the operation of a condominium." § 718.103(2), Fla. Stat. (1981). In 1991, the legislature amended the definition of condominium "association" in section 718.103(2) to mean,

> in addition to any entity responsible for the operation of common elements owned in undivided shares by unit owners, any entity which operates or maintains other real property in which unit owners have use rights, where membership in the entity is composed exclusively of unit owners or their elected or appointed representatives and is a required condition of unit ownership.

Ch. 91-103, § 1, Laws of Fla. As the trial court found, there was no genuine dispute that if the 1991 definition applied retroactively, then the master association

4

would be a condominium "association" and subject to the chapter 718 disclosure requirements.

Dimitri contends that the 1991 definition applies retroactively to the master association declaration, and even if it doesn't, the master association still is a condominium "association" under the 1982 definition. The master association responds that the 1991 definition does not apply retroactively, and it is not a condominium "association" under the plain language of the 1982 definition. We address both issues – which definition applies, and whether the master association is a condominium "association" under the applicable definition – below.

Which Definition of Condominium<br>"Association" Applies: 1982 or 1991?

An association declaration is a contract, see Cohn v. Grand Condo. Ass'n, Inc., 62 So. 3d 1120, 1121 (Fla. 2011) ("A declaration of condominium possesses attributes of a covenant running with the land and operates as a contract among unit owners and the association, spelling out mutual rights and obligations of the parties thereto." (quotations omitted)), and normally, the statutes in effect at the time a contract is executed govern substantive issues arising in connection with that contract,[2] see Sans Souci v. Div. of Fla. Land Sales & Condos., Dep't of Bus.

---

[2] As the trial court correctly noted, later amendments to chapter 718 may alter the rights and duties of the parties to an existing declaration if the declaration specifically incorporates these amendments. See, e.g., Kaufman v. Shere, 347 So. 2d 627, 628 (Fla. 3d DCA 1977) ("[T]he provisions of the Condominium Act as presently existing, or as it may be amended from time to time, including the

<u>Regulation</u>, 421 So. 2d 623, 628 (Fla. 1st DCA 1982) ("Thus, the law on the date of filing of the [declaration and master lease] engrafts the law of Florida into the documents, as if it were expressly stated in the documents."), <u>cited in</u> <u>Cohn</u>, 62 So. 3d at 1122; <u>see also</u> <u>Shavers v. Duval Cty.</u>, 73 So. 2d 684, 689 (Fla. 1954) ("It has long been firmly established that the laws existing at the time and place of the making of the contract and where it is to be performed which may affect its validity, construction, discharge and enforcement, enter into and become a part of the contract as if they were expressly referred to or actually copied or incorporated therein."); <u>Fla. Beverage Corp. v. Div. of Alcoholic Beverages and Tobacco, Dep't of Bus. Reg.</u>, 503 So. 2d 396, 398 (Fla. 1st DCA 1987) ("The laws in force at the time of the making of a contract enter into and form a part of the contract as if they were expressly incorporated into it."). There are times, however, that the legislature intends for a new statute to be applied retroactively to contracts entered into prior to the enactment of the statute. <u>See</u> <u>Menendez v. Progressive Exp. Ins. Co.</u>, 35 So. 3d 873, 876 (Fla. 2010) ("The dispositive issue before this Court is whether section 627.736(11), Florida Statutes (2001), can be applied retroactively to an insurance policy issued prior to the enactment of the statute."). Dimitri

---

definitions therein contained, are adopted and included herein by express reference"). The master association declaration in this case does not contain a provision incorporating later amendments to the state condominium statute.

contends that the 1991 definition of condominium "association" should be applied retroactively to the master association declaration.

The Florida Supreme Court uses "a two-prong test" to determine whether a statute should be applied retroactively to an existing contract. Id. at 877. "First, the Court must ascertain whether the Legislature intended for the statute to apply retroactively. Second, if such an intent is clearly expressed, the Court must determine whether retroactive application would violate any constitutional principles." Id.

Under the first prong, we look to the terms of the statute to determine legislative intent as to retroactivity. Biometics, 69 So. 3d at 949. In Biometics, the Florida Supreme Court looked to the effective date of the enacting legislation to determine if there was a clear intent for the statute to apply retroactively. Id. There, "the enacting legislation simply provide[d] that '[t]his act shall take effect July 1, 2002." Id. (quoting Ch. 02-77, § 2, at 909, Laws of Fla.) (second alteration in original). "Due to the lack of evidence of legislative intent to apply the statute retroactively," the Court said, "we conclude that the [new statute] applies prospectively." Id. Because the legislature did not express an intent to apply the new statute retroactively, the Court explained it "need not consider the second interrelated inquiry as to whether retroactive application [was] constitutionally permissible." Id.

Looking to the effective date of the 1991 definition for condominium "association," here too the legislature said that it "shall take effect January 1, 1992," six months after the act was signed by the governor. Ch. 91-103, § 28, Laws of Fla. ("Except as otherwise provided herein this act shall take effect January 1, 1992."). Indeed, other sections of the same new law took effect earlier, but the legislature decided to have the new definition of condominium "association" apply later. Compare id., with id. § 27 ("Effective upon becoming a law, there is hereby appropriated . . . ."). Just as in Biometic, having the new definition take effect months in the future is not a clear expression of the legislature's intent to have it apply retroactively. Without an express intent to have the statute apply retroactively, we need not reach the second prong of the retroactivity test.

### Is the Master Association a Condominium "Association" Under the 1982 Definition?

Having concluded that the 1991 definition of condominium "association" does not retroactively apply to the master association declaration, we next decide whether the master association was a condominium "association" under the 1982 definition. Dimitri argues that it is.

As we noted above, condominium "association" was defined in 1982 as "the corporate entity responsible for operation of the condominium." § 718.103(2), Fla. Stat. (1981). "[O]peration of the condominium" is a term of art, defined as "the

8

administration and management of the condominium property." Id. § 718.103(15). And "condominium property" is "the lands, leaseholds, and personal property that are subjected to condominium ownership, whether or not contiguous, and all improvements thereon and all easements and rights appurtenant thereto intended for use in connect with the condominium." Id. § 718.103(11).

Reviewing the master association declaration in this case, the master association does not administer and manage property subject to condominium ownership. The building sub-associations have the duty "to maintain, repair, replace and restore the Unit Property and all Buildings located thereon as may be subject to their respective control or jurisdiction in a neat, sanitary and attractive condition." The master association is instead responsible to "maintain, or provide for the maintenance" of all common property not owned and controlled by the sub-associations within the larger development, such as the private streets and landscaping. Because it does not administer and manage condominium property, the master association cannot be a condominium "association" under the 1981 definition.

The Florida Supreme Court reached the same conclusion under similar facts in Siegel. There, as here, there were four buildings in a larger property, each with its own sub-association. Id. at 113. Each sub-association "operate[d] the building and its 'common elements,' consisting of parking lots, terraces, recreational

9

amenities, a swimming pool, balconies, and air conditioning equipment." Id. The master homeowners' association for the entire development "operate[d] the 'common properties,' which include[d] a health spa, marina, restaurant, and tennis courts," and had "the power to assess for the expenses of these properties." Id. The department of business regulation found that the master homeowners' association was not a condominium "association" subject to the requirements of chapter 718 because it was "not the entity responsible for the operation of any condominium property." Id. at 114. The building sub-associations instead had "the duty to maintain the condominium property at its sole cost and expense." Id. The Court agreed with the department that the "homeowners' association [was] not a condominium association under the provisions of chapter 718" because it had "the authority to impose assessments upon properties that [were] not condominium property within the meaning of chapter 718." Id.

Here, as in Siegel, the master association was responsible for common properties that were not owned and controlled by the individual sub-associations. The master association had the authority to impose assessments only for the maintenance and administration of these common properties, and could not assess the sub-association's property. The pre-1991 version of "chapter 718 reveals no legislative intent to include this type of community 'management association' within its scope." Id. (quotation omitted); see also Raines, 413 So. 2d at 32

10

("Although the association has broad powers, it is not 'the corporate entity responsible for the operation of a condominium.' The individual condominium associations fit within this definition, but the respondent association does not." (citation omitted)).

Dimitri responds that despite this plain reading of the 1981 definition, we should use instead the "constituency" and "function" tests to determine whether the master association is a condominium "association" subject to chapter 718. The constituency test asks whether "the Association's membership is comprised of only condominium units owners, and only condominium unit owner have rights in the property administered by the Association." Siegel, 453 So. 2d at 417. The function test asks "whether the entity operated a condominium or has sufficient powers that constitute condominium operation." Id. (footnote omitted).

We decline Dimitri's invitation for two reasons. First, the Florida Supreme Court did not find the tests to be persuasive or helpful in Siegel. In that case, our court applied the constituency and function tests to reverse the department of business regulation's decision that the master homeowners' association was not a condominium "association" as defined by section 718.103(2). Id. at 420 ("Applying, appropriately, both the constituency test advanced by appellant, and the function test embraced by appellees, we conclude that the Homeowners' Association is a condominium 'association' within the meaning of Section

11

718.103(2), subject to ultimate control by unit owners in accordance with Section 718.301."). The Florida Supreme Court quashed our decision, and applied the same 1982 version of the statute to "find that this homeowners' association [was] not 'the corporate entity responsible for the operation of the condominium.'" Siegel, 479 So. 2d at 114 (quoting § 718.103(2), Fla. Stat. (1979)). The Court did not use the constituency and function tests to analyze whether the master homeowners' association was a condominium "association," and it did not distinguish our court's application of these tests. The Court didn't even mention the constituency and function tests on its way to quashing our decision and approving the ruling of the department that the master homeowners' association was a condominium "association."

Second, the constituency and function tests are administrative interpretations of section 718.103(2) adopted by the department of business regulation. See Siegel, 453 So. 2d at 420 ("Appellant contends that whether any master association is in fact a statutorily controlled condominium association is determined by examining the Homeowners' Association's constituency, relying on the Division's declaratory statements . . . . The Division counters that . . . [t]he litmus test . . . is not a constituency test but a function test, i.e., whether the entity operates a condominium or has sufficient powers that constitute condominium operation."). Where statutory language is plain and unambiguous, as it is here, the Florida

Supreme Court has said we need not give agency interpretations the usual level of deference.[3]  See GTC, Inc. v. Edgar, 967 So. 2d 781, 785 (Fla. 2007) ("[I]f the meaning of the statute is clear then this Court's task goes no further than applying the plain language of the statute. However, when a statutory term is subject to varying interpretations and that statute has been interpreted by the executive agency charged with enforcing the statute, this Court follows a deferential principle of statutory construction . . . ."); Donato v. Am. Tel. & Tel. Co., 767 So. 2d 1146, 1153 (Fla. 2000) ("We recognize the general rule that the interpretation of a statute by the administrative agency or body charged with its enforcement is entitled to great deference and should not be overturned unless clearly erroneous or in conflict with the legislative intent of the statute.  However, because we conclude that the term 'marital status' is not ambiguous, either by itself or in conjunction with the other provisions within the Civil Rights Act, we are less constrained to accept the Commission's interpretation of the statute." (quotation omitted)); Fla. Dep't of Educ. v. Cooper, 858 So. 2d 394, 396 (Fla. 1st DCA 2003) ("First, the court must look to the plain language of the statute. Where the language is clear and unambiguous, it must be given its plain and ordinary meaning. . . .  [I]f the

---

[3] This is consistent with federal administrative agency principles.  The federal courts "do not apply Chevron deference . . . when a statutory command of Congress is unambiguous . . . .  Where the statutory language is clear, agency regulations have no effect."  Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1320 (11th Cir. 2011).

statutory language is ambiguous, the interpretation given the statute by the agency charged with its enforcement is entitled to great deference and should not be overturned unless it is clearly erroneous." (citations omitted)).

## CONCLUSION

We conclude that the 1991 amendment to the definition of section 718.103(2) does not apply retroactively to the master association declaration executed in 1982; the master association is not a condominium "association" under the 1982 version of section 718.103(2); and, therefore, the master association is not subject to the disclosure requirements of chapter 718. We affirm the summary judgment in favor of the master association.

Affirmed.