# Third District Court of Appeal

## State of Florida

Opinion filed June 2, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D19-2013 and 3D19-617
Lower Tribunal No. 18-2799

_____

**De Soleil South Beach Residential Condominium Association, Inc.,**
Appellant,

vs.

**De Soleil South Beach Association, Inc., et al.,**
Appellees.

Appeals from the Circuit Court for Miami-Dade County, William Thomas, Judge.

Law Offices of Jason Gordon, P.A., and Jason Gordon (Hollywood), for appellant.

Genovese Joblove & Battista, P.A., and Richard Sarafan and Michael Bild, for appellee South Beach Resort Development, LLC; and Young, Berman, Karpf & Gonzalez, P.A., and Andrew S. Berman and Jamie Webner, for appellee De Soleil South Beach Association, Inc.

Before LOGUE, HENDON, and BOKOR, JJ.

HENDON, J.

Appellant, De Soleil South Beach Residential Condominium Association, Inc. (the "Residential Association"), plaintiff below, appeals from the September 19, 2019 order denying its motion for rehearing of the trial court's order on Appellees', South Beach Resort Development, LLC (the "Developer"), and De Soleil South Beach Association, Inc. ("Master Association") (collectively, the "Defendants") cross-motions for summary judgment rendered on July 11, 2019, and the July 25, 2019 Final Judgment. We affirm in part, and reverse in part.

The dispute arises out of the operation of a South Beach hotel, the Z Ocean Hotel (the "Building"). The Building is composed of three legal parcels of land: a residential parcel, a commercial parcel, and a garage parcel, each governed by separate rights, obligations and interrelationships. The owners of those three parcels are the three members of the Master Association. The Master Association's board consists solely of the owners of these three parcels: the Developer, which is the owner of both the garage and commercial parcels; and the Residential Association, an entity governed by a board and a membership consisting of the owners of the eighty condominium units.

2

Two recorded documents govern the structure and relationships among the entities in the Building's ownership and operations, and each unit owner purchased their properties subject to these documents: (1) the Declaration of Covenants, Easements, and Restrictions (the "Master Declaration"), which was recorded first, and (2) the Declaration of Condominium, which governs the hotel room portion of the Building. The Master Declaration established the Master Association to operate the "Shared Facilities" used in common by the three parcels. Under these two recorded documents, the Master Declaration controls in the event of any conflicts or inconsistencies. The residential form of property ownership is condominium, through the Condominium Declaration. The plaintiff Residential Association is the association governed by the Condominium Declaration. The residential owners are not parties to the Master Declaration.

The eighty individual hotel rooms in the hotel Building are also the eighty individual condominium units in the residential parcel. Members of the Residential Association are entitled to one vote per unit in all Residential Association matters, equal to eighty member votes. Each unit owner purchased their unit subject to both Declarations. The Developer of the condominium currently owns twelve units in the residential parcel, is a

3

member of the Residential Association, and has twelve member votes.[1]

Most of the unit owners, including the Developer, are part of a hotel unit rental program administered by De Soleil Management ("DSM"), the management company that pays all the bills. According to the Residential Association, DSM is controlled by the Developer.

In April 2016, the Developer amended the Master Declaration to allow the Master Association to collect assessments directly from unit owners, impose fees and fines, and to evict any unit owner not in compliance with the Master Declaration, although residential owners are not parties to the Master Declaration. In June 2016, DSM stopped forwarding assessment money belonging to the Residential Association paid by unit owners in the rental program. Then the Residential Association stopped paying its assessments to the Master Association. The Residential Association also refused to pay DSM (acting for the Master Association) amounts DSM had paid for the

---

[1] It is unclear how many units were owned by the Developer during the times relevant to this case but, in its Answer and Affirmative Defenses, the Developer admitted to owning "13 units…and its affiliates own an additional 2 units…." This gave the Developer a total of 15 votes (which is 18.75% of the votes) in the Residential Association. As the Developer owns two of the three parcels, it also had two of the three votes and always controlled the votes in the Master Association.

Residential Association's repair and restoration obligations of common areas.

In December 2017, the Residential Association held a board meeting and purported to suspend the voting rights of roughly 60% of its members for the alleged nonpayment of assessments to the Residential Association (the "First Suspension"). By suspending the voting rights of most of the owners (including the Developer's), the Residential Association believed this would eliminate the need to satisfy the 75% membership approval condition precedent needed to file a lawsuit. In January 2018, the Residential Association filed suit seeking declaratory judgment against the Defendants. The Second Amended Complaint sought, among other things, declaratory relief for a conflict of interest between the Residential Association and the Master Association, alleging that the Defendants amended the governing documents to directly assess fees and fines in order to circumvent the Residential Association's purportedly exclusive statutory and contractual powers to do those things regarding its membership.[2]

---

[2] Because the Master Association's Board had three votes, two of which belonged to the Developer (who owned two of the three parcels), the Residential Association's powers were allegedly at the mercy of entities that did not represent condominium owners.

In October 2018, the Defendants moved for summary judgment, arguing that the Residential Association's December 2017 First Suspension of member voting rights was unlawful and invalid because the Residential Association had failed to satisfy the condition precedent necessary to file a suit, and thus lacked standing because it had failed to obtain a three-fourth's vote of its members necessary to file suit.

The trial court entered summary judgment and dismissed the suit in favor of the Defendants, concluding:

- Both Master Association and Developer had standing to contest the suspension of voting rights;

- The Developer's voting rights were not properly terminated because no proof of the delinquency was given 30 days before suspension of the voting rights and because the Board meeting where the suspension took place was improperly noticed as it did not specify that suspension of voting rights was on the agenda; and

- Thus, the required 75% vote to initiate litigation was not obtained.

On appeal, this Court held that the Master Association did <u>not</u> have standing to assert the Residential Association's failure to satisfy the three-fourths authorizing vote requirement, but because the Developer was part of the Residential Association by virtue of owning certain units, the Developer did have standing. <u>De Soleil S. Beach Residential Condo. Ass'n, Inc. v. De</u>

6

<u>Soleil S. Beach Ass'n, Inc.</u>, No. 3D18-1423, 45 Fla. L. Weekly D115 (Fla. 3d DCA Jan. 15, 2020) ("<u>De Soleil 1</u>").[3]

On November 23, 2018, the Residential Association's board held a meeting at which it again purported to suspend the voting rights of its members, including the Developer's (the "Second Suspension"). The Residential Association also sought to remove two of the four board members from the Residential Association board and to replace them with their own choices. Subsequently, the Residential Association's board declined to recognize the recall.

On January 17, 2019, the trial court granted the Defendants' motion for summary judgment, concluding that the suspension of voting rights was invalid and that the Residential Association failed to satisfy the condition precedent that it obtain 75% member approval prior to filing this lawsuit. The

---

[3] In <u>De Soleil 1</u> (Emas, J.), the Residential Association appealed from the trial court's first entry of summary judgment and dismissal of the declaratory action below in favor of the Defendants upon a determination that the Residential Association lacked standing to sue the parties by failing to satisfy a condition precedent contained in the Declaration of Condominium. This Court found that the Master Association does not have standing to challenge the Residential Association's invalid vote-elimination strategy because the Master Association is not a party to the Declaration of Condominium that governs the Residential Association. Because the Master Association was not a unit owner, this Court reversed the summary judgment entered in its favor. <u>Id.</u> at *4

Residential Association sought reconsideration and rehearing; the matter was reheard; the order stood. The Residential Association has appealed.

On January 28, 2019, the Defendants asked the trial court to invalidate the Second Suspension of voting rights and to validate the recall, and filed counterclaims seeking the same relief.

Prior to entry of final judgment, the Developer moved for leave to amend to add counterclaims. The trial court rendered its Final Judgment on March 4, 2019 based on the summary judgment determination that the First Suspension was invalid, and that the Residential Association failed to obtain the votes required to the file the action. The trial court held, however, that the Residential Association was deprived of the opportunity to be heard regarding the Second Suspension of voting rights, as that action by the Residential Association took place before the summary judgment order was entered. Eighteen days after final judgment was entered, the trial court granted the Developers' Motion for Leave to Amend that was filed prior to entry of the March 4 final judgment, to allow the Defendants to add counterclaims.

On July 11, 2019, the trial court entered summary judgment in favor of the Defendants on Counts V, VI and VII of their counterclaim, setting aside both the First and Second suspensions of voting rights, unwound certain

8

ultra vires actions, and recognized the validity of the recall. The Residential Association has appealed.

In December 2019, this Court entered an order consolidating the two appeals: 3D19-617 (summary judgment re. First Suspension) and 3D19-2013 (summary judgment re. Second Suspension).

Standard of review

We review de novo a trial court's interpretation of a condominium declaration. Lenzi v. Regency Tower Ass'n, Inc., 250 So. 3d 103, 104 (Fla. 4th DCA 2018). We review the grant of summary judgment de novo. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000). Summary judgment is proper when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Id.; Cia. Ecuatoriana de Aviacion C.A. v. US. & Overseas Corp., 144 So. 2d 338, 340 (Fla. 3d DCA 1962) ("The fundamental purpose of the summary judgment procedure is to expedite litigation"); Fla. R. Civ. P. 1.510.

The Second Voting Rights Suspension

The trial court held that, as a matter of law, the Residential Association lacked the power to suspend its members' voting rights for non-payment of assessments (the Second Suspension). It based its conclusions on the following:

9

1) Because condominium declarations are creatures of contract, amendments to the Condominium Act, Ch. 718, Florida Statutes, do not apply retroactively without express statutory intent. See Dimitri v. Com. Ctr. of Miami Master Ass'n, Inc., 253 So. 3d 715, 719 (Fla 3d DCA 2018); Tropicana Condo. Ass'n, Inc. v. Tropical Condo., LLC, 208 So. 3d 755, 758 (Fla 3d DCA 2016) (retroactive application of amendment to Condominium Act "impermissible" because it would alter and thereby detract from unit owner rights).

2) The Declaration of Condominium here does not contain Kaufman language, i.e., the "as amended from time to time" language subjecting it to future statutory changes to the Condominium Act. Rather, it specifically incorporates only the version of the Condominium Act that existed when the Declaration was recorded, expressly disavowing the application of later amendments to the Condominium Act.[4] Kaufman v. Shere, 347 So. 2d 627, 628 (Fla. 3d DCA 1977) (holding condominium declaration containing "as it

---

[4] Section 1 of the Declaration of Condominium provides: "Developer is the owner of record of the 'Condominium Property' and does hereby submit same to condominium ownership pursuant to the Condominium Act, Chapter 718, Florida Statutes, as amended through the date of recording this Declaration". (emphasis added). Identically, subsection 3.1 of the Declaration of Condominium defines "Act" as "the Condominium Act, Chapter 718, Florida Statutes, as amended through the date of recording amongst the Public Records of the County". (emphasis added).

10

may be amended from time to time" language incorporated and rendered applicable later amendments to Condominium Act); see also Cohn v. Grand Condo. Ass'n, Inc., 62 So. 3d 1120, 1121 (Fla. 2011) (quoting Woodside VIII Condo. Ass'n v. Jahren, 806 So. 2d 452, 456 (Fla. 2002)).

3) The Declaration of Condominium at issue here was recorded and became effective in 2006. The Condominium Act, Section 718.303, Florida Statutes, was amended in 2010 to add subsection (5), for the first time permitting an association to "suspend the voting rights of a member due to nonpayment of any monetary obligation." Prior to that amendment, the Condominium Act did not give an association that right or remedy to impair or suspend the voting rights of its members for nonpayment.

4) Here, the Declaration of Condominium provides for specific remedies when a unit owner becomes delinquent in the payment of fees to the Residential Association, and voting rights suspension is not among them. Thus, the Residential Association lacks the power, pursuant to its own Declaration, to suspend the voting rights of its members for non-payment of assessments.

Thus, the trial court concluded that clear and binding Florida law prohibits application of section 718.303(5) of the Condominium Act to this

11

Condominium Declaration, Residential Association, or its members, and the Second Suspension of members' voting rights was invalid as a matter of law.

The Board Member Recall issue

The Residential Association did not dispute that if members' votes had not been improperly suspended, the majority required to recall ousted board members and remove from office the replacement board members would have been met. Because the trial court determined that the suspension of voting rights was invalid, it followed that the recall of the ousted board members was not facially invalid on the ground that the majority of the members who voted for recall had their voting rights suspended.

The court noted that the Residential Association's board raised only two reasons why it concluded that the recall was not facially valid: (1) the majority of the members who voted for the recall had had their voting rights suspended, and (2) by statute the board, and not the members, fills vacancies. It was undisputed that less than a majority of the board members were sought to be removed and, upon the Court's finding that the recall was valid, two vacancies were created on the board. Pursuant to the statute, the vacancies created may be filled by the affirmative vote of the majority of the remaining board members. Thereafter, the board is entitled to take the

actions it deems appropriate and that comport with the Condominium Act and Condominium Documents.

The trial court found that, pursuant to section 718.112(2)(j)5., Florida Statutes (2019), because the recall was facially valid, the two members sought to be ousted should have been recalled effective immediately. The court also found that the second reason provided by the Board to not certify the recall does not relate to the facial validity of the recall, but to the issue of who is entitled to fill the vacancies caused by the removal of board members. The court found that the Residential Association's after-the-fact challenges to the validity of the recall, which were not reflected as the basis for the Board's actions, are irrelevant as they were not the grounds upon which the board decided not to certify the recall.

Discussion

We first address whether the Master Association has standing to challenge the actions of the Residential Association. We conclude, as we did in De Soleil 1, that it does not.

The trial court entered summary judgment in favor of the Master Association and the Developer on their counterclaims, on essentially the same basis as in De Soleil 1, i.e., the invalidity of the Residential Association's suspension of voting rights in order to counter certain

13

assessment actions taken by the Master Association. The Developer and Master Association argue that De Soleil 1 is distinguishable, because the behind-the-curtain actions of the Condominium Association in violation of its governing document impaired substantive property rights (assessments) of the Master Association, thereby conferring it with the standing that was lacking in the earlier case.

More specifically, the Master Association argues that the actions of the Condominium Association in (a) illegally suspending the voting rights of a majority of owners to reach an artificial 75% threshold calculated upon a small minority of total voting units and (b) then using that manipulated super-majority vote to take affirmative action to attempt to cancel the recorded Master Declaration on real property, were ultra vires acts that substantially and materially impaired the vested interests of the Master Association. That, it argues, gives the Master Association standing to challenge the legality of those actions.

A party has standing when it has such a legitimate interest in a matter as to warrant asking a court to entertain it. Brown v. Firestone, 382 So. 2d 654, 662 (Fla. 1980) (holding a party must "demonstrate a direct and articulable stake in the outcome of a controversy" to open the courthouse doors); Argonaut Ins. Co. v. Com. Standard Ins. Co., 380 So. 2d 1066, 1067

(Fla. 2d DCA 1981); <u>Jamlynn Invs. Corp. v. San Marco Residences of Marco Condo. Ass'n</u>, 544 So. 2d 1080, 1082 (Fla. 2d DCA 1989) (holding a party has standing when it has "a sufficient interest at stake in the controversy which will be affected by the outcome of the litigation"); <u>Whitburn, LLC v. Wells Fargo Bank, N.A.</u>, 190 So. 3d 1087 (Fla. 2d DCA 2015); <u>Ferreiro v. Philadelphia Indem. Ins. Co.</u>, 928 So. 2d 374, 377 (Fla. 3d DCA 2006) (holding that absent an existing case or controversy between the parties, there would not be standing to pursue a class action claim or represent a class).

The Master Association's reliance upon <u>Jamlynn</u> for the proposition that it has standing is misplaced. In that case, both parties were subject to the condominium declaration. In this case, the Master Association is not subject to the Condominium Declaration, and consistent with <u>De Soleil 1</u>, does not have standing to challenge the Residential Association's suspension of its members' voting rights. The Developer, on the other hand, does have standing because the Developer is also a unit owner and subject to the Declaration of Condominium.

The underlying facts have not essentially changed since <u>De Soleil 1</u>. Accordingly, we reverse as to the Master Association because the Master Association is not a unit owner subject to the Declaration of Condominium.

We affirm the final judgment as to the Developer because the Developer is a unit owner and has standing to challenge the Residential Association's actions.

We next address the question of whether the trial court had jurisdiction to grant the Defendants' motion for leave to amend the complaint to add counterclaims after summary judgment was entered. We conclude it did, as the time for rehearing had not expired.

The Residential Association concedes the court has jurisdiction to grant leave to amend. "The rule is firmly established in this State that the trial Court loses jurisdiction of a cause after a judgment or final decree has been entered and the time for filing petition for rehearing or motion for new trial has expired or same has been denied." State ex rel. Am. Home Ins. Co. v. Seay, 355 So. 2d 822, 824 (Fla. 4th DCA 1978) (quoting Gen. Cap. Corp. v. Tel Serv. Co., 212 So. 2d 369, 382 (Fla. 2d DCA 1968)); Liberty Ins. Corp. v. Milne, 98 So. 3d 613, 615 (Fla. 4th DCA 2012). As the deadline to move for rehearing had not expired, and the Residential Association had not yet filed a motion for rehearing, the court still retained jurisdiction to consider the Defendants' motion to supplement counterclaims and amend the pleadings regardless of the merit of those counterclaims.

On de novo review of the record, we affirm the final judgment granting declaratory relief as to the Developer and reverse as to the Master Association for the same reasons as stated in <u>De Soleil 1</u>.

Affirmed in part and reversed in part.